UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-60055-CR-UNGARO

UNITED STATES OF AMERICA,

VS.

GEDEON JOSEPH,

    Defendant.
_____/

## DETENTION ORDER

THIS MATTER came before the Court upon the Government's motion to detain the defendant, Gedeon Joseph, prior to trial and until the conclusion thereof. Having received evidence and heard argument of counsel, the Court hereby GRANTS the motion and enters its written findings of fact and statement of reasons for the detention in accordance with the provisions of 18 U.S.C. § 3142(i).

A.    INTRODUCTION

On March 6, 2019, the Court held a hearing to determine whether any condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of any person and the community. 18 U.S.C. § 3142(f). Based upon the Indictment of the Grand Jury, see United States v. Hurtado, 779 F.2d 1467, 1479 (11th Cir. 1985), the Court finds probable cause that the defendant, Gedeon Joseph, committed an offense under (Title 18, United States Code) Section 924(c). This finding gives rise to a rebuttable presumption that no condition or combination of conditions of release will reasonably assure the appearance of the defendant as required and the safety of the community. 18 U.S.C. § 3142(e). Assuming, arguendo, that

the defendant has come forward with sufficient evidence to rebut the statutory presumption, the presumption "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence." United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990); United States v. King, 849 F.2d 485, 488 (11th Cir. 1988). Throughout this proceeding, the burden of persuasion is upon the Government to establish by clear and convincing evidence that the defendant poses a danger to the community, 18 U.S.C. § 3142(f), and/or to establish by a preponderance of the evidence that he poses a risk of flight. Quartermaine, 913 F.2d at 917. In determining whether the Government has met its burden by the requisite standard of proof, this Court must take into account the factors enumerated in 18 U.S.C. § 3142(g).

B.   FINDINGS OF FACT

1.   The defendant, Gedeon Joseph, is charged with conspiracy to commit Hobbs Act robbery (Count 1), Hobbs Act robbery (Count 2), and carrying (more specifically, brandishing) a firearm during and in relation to a crime of violence (Count 3), in violation of 18 U.S.C. §§ 1951(a), 924(c)(1)(A)(ii), and 2. Section 3142(g) expressly directs the judicial officer to consider the nature and circumstances of the offense charged, including, inter alia, whether the offense is a crime of violence or a crime involving a firearm. In this matter, the defendant is charged both with a crime of violence[1] and with a crime that involves a firearm. 18 U.S.C. § 3142(g)(1).

---

[1] See In re Fleur, 824 F.3d 1337, 1340 (11th Cir. 2016) (holding that Hobbs Act robbery qualifies as a "crime of violence" under the elements or use-of-force clause).

2

2.     The Court received credible evidence that the defendant, Gedeon Joseph, committed the offenses with which he has been charged.  More specifically, the Government adopted the Affidavit attached to the Criminal Complaint as its case agent's testimony on direct examination.  See Affidavit (attached to Criminal Complaint) (DE 1). The content of the Affidavit was not materially impeached, contradicted, or rebutted, and the undersigned accepts the facts set forth therein as true for purposes of this bond determination.  In pertinent part, the Affidavit states:

> On December 24, 2018, at approximately 9:10 a.m., Sunrise Police officers responded to an armed robbery at the Yard House restaurant at the Sawgrass Mills Mall, located at 2610 Sawgrass Mills Circle, Sunrise, Florida. The investigation revealed that two black male suspects arrived in the mall parking lot near the Yard House in a silver Hyundai Elantra approximately one hour before the actual incident occurred.  The car left and returned, and at approximately 9:00 a.m., the Hyundai backed into a parking space directly in front of the rear door to Yard House near the dumpster area.  Thereafter, the two suspects exited the vehicle, walked towards the dumpster area, and entered through the rear door of Yard House, as it was opened by [WATVERLY] MORTIMER, a Yard House employee.
>
> One suspect, later identified as [ZYHEEM IAN] SMITH, was a heavier set black male with short dreads tucked underneath a dark colored face mask and was armed with a tan colored Glock 19X style semi-automatic pistol and was not wearing gloves.  The second suspect, later identified as [GEDEON] JOSEPH, was a thin-built black male with short dreads tucked underneath a skully cap and a cloth covering his face, wearing black and white Nike brand shoes, and black baseball style gloves.  The robbery was recorded by Yard House security cameras.
>
> Upon entering, SMITH and JOSEPH went directly upstairs towards the manager's office.  Once upstairs, SMITH and JOSEPH encountered the manager who was standing just outside an office.  SMITH brandished the Glock 19X, pointed it at the manager, and grabbed the manager's cell phone out of his hand.  SMITH and JOSEPH then forced the manager at gunpoint to open a safe and place bills and deposit bags into a plastic bag.  SMITH told the manager to empty the safe or he would shoot the manager in the leg.  After the bag was filled, SMITH and JOSEPH exited through the same door they had entered, ran to the silver Hyundai Elantra, and exited the mall parking lot, out of camera view.  The total approximate loss suffered by Yard

House was $22,000.

MORTIMER was interviewed by law enforcement at the scene, and provided his cellphone number and a home address in West Park, Florida. MORTIMER claimed he did not know the individuals who committed the robbery.

After the robbery, law enforcement found the manager's cellphone on the ground behind the Yard House. Subsequent analysis revealed SMITH's fingerprints on the manager's cellphone.

Law enforcement conducted a search of SMITH's public social media accounts and found an associated cellphone number for SMITH. Toll records for SMITH's cellphone show that on the morning of December 24, 2018, just prior to the robbery, SMITH called MORTIMER's cellphone three times. Specifically, SMITH placed a call to MORTIMER at 7:39 a.m. that lasted for 5 seconds, another call at 7:40 a.m. that lasted 3 seconds, and a third call at 8:20 a.m. that lasted 7 seconds. Toll records also show that at approximately 5:50 a.m. on the morning of December 25, 2018, SMITH placed a call to MORTIMER that lasted approximately 17 minutes.

Cellsite records for SMITH's phone show that in the early morning hours of December 24, 2018, the phone travelled from Orlando, to the area of MORTIMER's home in West Park, and then to the vicinity of the Yard House in Sunrise, arriving at approximately 8:00 a.m., where it remained until shortly after the robbery, when it travelled back to the Orlando area.

Toll booth photos were obtained from the Florida Department of Motor Vehicles matching the known locations of SMITH's cellphone. Those photos revealed a silver Hyundai Elantra, matching the one used during the robbery, with a visible license plate. A search of that license plate shows that the vehicle was rented from Unique Car Rental, in the Orlando area.

Accordin[g] to SMITH's public Facebook profiles, JOSEPH and MORTIMER are "friends" with SMITH. On January 16, 2019, law enforcement observed a photo on SMITH's Facebook page of SMITH, JOSEPH and MORTIMER, along with an unidentified person, that was posted on January 10, 2019. The photo was removed from SMITH's Facebook page later on January 16, 2019.

MORTIMER's public social media accounts show that he has an Instagram handle of "Waffles Clout" and a Facebook handle of "Zoe Waff."

4

> JOSEPH's public Facebook profile shows that JOSEPH matches the physical appearance of the second suspect in the robbery. In addition, on his Instagram account, JOSEPH posted several pictures of himself wearing the same distinct black and white Nike shoes seen in the Yard House security video.
>
> Records of chat sessions from SMITH's Facebook Messenger account show that on November 26, 2018, SMITH, JOSEPH, and MORTIMER participated in a chat session in which SMITH advised JOSEPH to "save 200 so we can get a rental to hit waffles kick in the 23rd or 24th." Based on the context and my training and experience, I believe that SMITH was advising JOSEPH to save $200 to pay for a rental car that could be used for a robbery of MORTIMER's workplace on either December 23 or December 24, 2018.
>
> Records of chat sessions from JOSEPH's Facebook Messenger account show that in mid-December 2018, JOSEPH and MORTIMER exchanged messages regarding obtaining a rental car for purposes of a "lick," a term which, based on the context and my training and experience, refers to a robbery .
>
> On December 24, 2018, at approximately 8:19 a.m., SMITH sent MORTIMER a message telling MORTIMER "we here." At approximately 8:28 a.m., and MORTIMER told SMITH that "The manager for the safe aaint here yet." At approximately 9:00 a.m., SMITH sent a message to MORTIMER saying "U gon open the door?" MORTIMER responded "Im coming out at 9:07." At approximately 9:16 a.m., MORTIMER sent a message to SMITH that said "Throw the shirts away."

Affidavit ¶¶ 3-16 (DE 1).

At the hearing, the Government proffered that Joseph had engaged in Facebook chats with Mortimer, in which he asked Mortimer about escape routes after the robbery. The Government also proffered that various Facebook photographs depict Joseph in the possession of weapons and ammunition.

According to the Government, if convicted at trial, Gedeon Joseph would face a Guidelines sentence of (approximately) 57 to 71 months' imprisonment on Counts 1 and 2. That Guidelines sentence would then be followed by a consecutive 7-year (84-month) mandatory minimum sentence on Count 3. Therefore, if convicted of all counts, Gedeon

5

Joseph would face a prospective sentence of (approximately) 141 to 155 months' imprisonment. 18 U.S.C. § 3142(g)(2).

3. The pertinent history and characteristics of the defendant are significant to this Court's assessment of his candidacy for bond. The defendant, Gedeon Joseph, age 21, was born in Miami and has been residing for the past 14 years in Central Florida (Clermont). He does not possess a passport and has never traveled outside the United States.

The defendant advised that he is single and does not have any children. He resides with his parents and four of his siblings in a home that his parents rent in Clermont (Florida). He reported that he has additional siblings residing in Orlando, Minnesota, and Texas. The defendant advised that for the past four months he has been employed part-time at a local grocery store, earning $800 per month. Previously, he worked at various fast food restaurants. He advised that his only asset is a 2006 Mazda valued at $4,000.

The Pretrial Services Report shows that the defendant has been arrested for the following offenses: burglary of conveyance (2017); burglary of conveyance/petit theft (2017); and burglary of conveyance (2017). The Report shows that all of these charges were later dropped. 18 U.S.C. § 3142(g)(3)(A) and (B).

4. The Court received evidence concerning the nature and seriousness of the danger to the community that would be posed by the defendant's release. Gedeon Joseph appears to have conspired to commit the armed robbery of a restaurant. More specifically, Joseph communicated with Smith and with Mortimer concerning the rental of the vehicle utilized in the armed robbery. Furthermore, he personally participated in the armed robbery. Along with Smith, who brandished the firearm and threatened to shoot the

restaurant manager, Joseph helped force the manager to open a safe and hand over money and deposit bags. 18 U.S.C. § 3142(g)(4).

5. The Court specifically finds by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance at trial. 18 U.S.C. § 3142(e).

6. The Court specifically finds by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e).

C. STATEMENT OF REASONS FOR DETENTION

1. Based upon the above findings of fact, the Court concludes that the release of this defendant on bond prior to trial would present an unreasonable risk of flight. Joseph has no ties to South Florida and possesses minimal assets. Moreover, the evidence of his guilt is considerable, and he would face an extremely severe sentence – 141 to 155 months' imprisonment – upon conviction.

2. Based upon the above findings of fact, the Court concludes that the release of this defendant on bond prior to trial would present an unreasonable danger to persons and to the community. Gedeon Joseph appears to have conspired to commit the armed robbery of a restaurant. More specifically, Joseph communicated with Smith and with Mortimer concerning the rental of the vehicle utilized in the armed robbery. Furthermore, he personally participated in the armed robbery. Along with Smith, who brandished the firearm and threatened to shoot the restaurant manager, Joseph helped force the manager to open a safe and hand over money and deposit bags. Joseph's actions were both calculated and extremely dangerous.

D. DISPOSITION

Being fully advised, the Court hereby ORDERS that the defendant, Gedeon Joseph, be detained prior to trial and until the conclusion thereof.

The Court further ORDERS:

1. That the defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That the defendant be afforded reasonable opportunity for private consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

DONE AND ORDERED at Fort Lauderdale, Florida this 6th day of March 2019.

_____
BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

Copies to:

Hon. Ursula Ungaro
United States District Judge

All counsel of record

United States Marshal

United States Pretrial Services